## Fitler *against* Patton.

8ws455
193 564

A *fieri facias* returnable first Monday in August was placed in the sheriff's hands July 25th, and the defendant's goods sold under it on the 12th October. It did not appear when the goods were seized. *Held* the presumption was that the seizure was made before the writ was returnable.

It is not requisite that the sheriff should specify in his return to a *fieri facias* the particular goods taken, the sum for which each article sold, or the time of their seizure.

ERROR to the District Court for the city and county of *Philadelphia.*

This was an action of trespass brought by Price J. Patton against Daniel Fitler, sheriff, and Benjamin F. Hedges, for taking the plaintiff's goods. The plaintiff, Patton, proved an assignment to him by John C. Hopewell, a hatter, dated the 17th September 1839, of all

[Fitler v. Patton.]

his property consisting of hats, caps, &c. in a store, in trust for the payment of creditors, recorded on the 18th September 1839, and that these hats, caps, &c. were sold by the sheriff on the 12th October 1839, after the plaintiff had taken possession as assignee.

The defendants justified under a *pluries fieri facias* issued out of the District Court for the city and county of Philadelphia, returnable the first Monday of August 1839, and placed in the hands of the sheriff on the 25th July 1839, on a judgment at the suit of Henry Bromley against John C. Hopewell, sued with Edward Shewell. On this writ were the following endorsements : " The sheriff will stay proceedings for the present on the within writ. September 2d, 1839. H. Bromley." " Levied and sold personal property of the defendant Hopewell for $224.80. So answers B. F. Hedges, D. F. Daniel Fitler, sheriff. October 12th, 1839." It was a subject of dispute, and evidence was given on both sides to show when the levy was made and the sheriff's officer placed in possession. The defendants gave some evidence to prove the levy was made previous to the return day of the writ, and the watchman removed at the request of Hopewell in the beginning of September, the levy to remain.

The defendants asked the court to instruct the jury :

1. That if the jury believe that a levy was made under the writ of execution, the presumption is that it was made in proper time, and in the absence of testimony to the contrary, the jury should so find; which instruction the court refused to give.

2. That if the levy was made by the sheriff before the execution of the assignment to Patton, the suit should be brought in the name of Hopewell, and not of Patton. *Answer.* This is correct, provided the levy was not only made before the execution of assignment, but was continued afterwards down to the time of the assignment.

3. That if the jury believe the goods were in possession of Hopewell when the levy was made, Patton cannot, in the absence of notice given by him to the sheriff that he owned the goods levied on, recover in this suit. *Answer.* This is correct.

4. That Patton cannot recover in this suit without evidence of an application to the court to set aside the levy if improperly made. *Answer.* This is not so.

The court instructed the jury, *inter alia*, as follows : — " The plaintiff alleges that the *fieri facias* was not levied before the return day of the writ. The question is of the first importance whether the execution was levied before the first Monday of August. The return is dated 12th October 1839. It was in the power of the sheriff to have stated the day on which the levy was made, and the law would have received it as *primâ facie* evidence of the levy." And again : " Is there any evidence that the levy was made before 2d September 1839 ? There is very slight evi-

dence; it is in the conversation with Hopewell, spoken of by Harrington.　The sheriff had no power to levy after the return day.

The defendants excepted to the charge.

Errors assigned:

1. That the court refused to continue the cause, while no plea had been put in to the amended narr.

2. That the court refused, on the application of the defendants, to direct that a verdict be rendered in favour of Daniel Fitler, after the plaintiff had closed his case.

3. That the Judge erred in not charging the jury, as requested in defendants' 1st point.

4. In his answer to the defendants' 2d point.

5. That the court refused to charge as requested in the defendants' 4th point.

*Fallon,* for the plaintiff in error, referred to *Brotherton* v. *Livingston,* (3 *Watts & Serg.* 336); *Dolan* v. *Briggs,* (4 *Binn.* 500); Act 16th June 1836, *Purd.* (1841) 416, sec. 39; *Shafner* v. *Gilmore,* (3 *Watts & Serg.* 438); 3 *Munroe* 211; 3 *Gill* v. *Johns.* 368; *Jackson* v. *Shaffer,* (11 *Johns.* 517); *Hartwell* v. *Root,* (19 *Johns.* 345); *Hickman* v. *Caldwell,* (4 *Rawle* 381); *Howell* v. *Alkyn,* (2 *Ibid.* 282).

*F. W. Hubbell,* contra, cited *Eberle* v. *Mayer,* (1 *Rawle* 369); *Commonwealth* v. *Stremback,* (3 *Ibid.* 344); *Englebert* v. *Blanjot,* (2 *Whart.* 240); *Knowles* v. *Lord,* (4 *Ibid.* 500); *Hyskill* v. *Givin,* (7 *Serg. & Rawle* 369); *M'Cormick* v. *Miller,* (3 *P. R.* 230); *Lewis* v. *Smith,* (2 *Serg. & Rawle* 158); *Barnes* v. *Billington,* (1 *Wash. C. C.* 38); *Wood* v. *Vanarsdale,* (3 *Rawle* 401); *Williams* v. *East India Company,* (3 *East* 192); 3 *Chit. Pl.* 154; 2 *Caines* 243; *Prescott* v. *Wright,* (6 *Mass.* 23); *Bliss* v. *Ball,* (9 *Johns.* 132).

The opinion of the Court was delivered by

KENNEDY, J. — The third error assigned is the only one which requires special notice; for as to the remaining errors, that is, the first, second, fourth and fifth, it is sufficient to say that we think there is nothing in them.

The question presented by the third error is, whether in an action of trespass against a sheriff for taking and selling the goods of the defendant, named in a writ of *fieri facias,* placed in his hands some days before the return thereof, it ought to be presumed that the seizure of the goods was made before the writ became returnable, in the absence of testimony showing when it was made, but evidence given showing that the sale was made two months after the return day mentioned in the writ.　The point submitted by the counsel of the defendant below, out of which

this question arises, is in the following terms: "That if the jury believe that a levy was made under the writ of execution, the presumption is that it was made in proper time; and in the absence of testimony to the contrary, the jury should so find." This instruction, however, the court refused to give. The point would seem to have arisen very fairly in the cause, which made it the duty of the court, upon request, to instruct the jury in regard to it. From the evidence given it did not appear when the seizure of the goods sold by the sheriff was made. For aught that was shown, it might have been either before or after the return day mentioned in the writ. This being the case, it was very important to the defendant to have a proper direction from the court to the jury on this point, which would have gone far towards acquitting him of the trespass complained of by the plaintiff below. For it is a well settled rule of law, that where any act is required to be done by any one, and especially by an officer, within a limited time, which were he not to perform as required, would render him guilty of a criminal neglect of duty, the law will presume that it was done rightly, and will throw the burthen of proving the contrary on the other side. *Monke* v. *Butler*, (1 *Rolle's Rep.* 83); *Bull. N. P.* 298; *Williams* v. *The East India Company*, (3 *East* 199). Accordingly, in an information against Lord Halifax for refusing to deliver up the rolls of the auditor of the Exchequer, the Court of Exchequer put the plaintiff upon proving that he did not deliver them; for, as it was said, a person shall be presumed duly to execute his office till the contrary appear. *Bull. N. P.* 298; *Best on Presumptive Evidence, p. 63, pl. 57.* So in *Hartwell* v. *Root*, (19 *Johns.* 345), the very point raised here was decided in favour of the sheriff, who had sold a pair of horses in the month of May under a writ of *fieri facias* returnable on the third Tuesday of February preceding, alleging that he had made the seizure of the horses before the return day of the writ, leaving them in the possession of the defendant named therein, who afterwards sold them to the plaintiff, from whom the sheriff took and sold them again. It did not appear on the trial when the horses had been first seized by the sheriff, whether before or after the return day mentioned in the writ; whereupon the court held that he was entitled to the benefit of the presumption that the levy was legally made. See also *Powell* v. *Milburn*, (3 *Wilson* 362); 2 *Black.* 852–3; *King* v. *Hawkins*, (10 *East* 216).

In the course of the argument the return of the sheriff to the writ of *fieri facias* in this case was objected to as being altogether too general and loose to furnish any justification for his taking and selling the goods of the defendant named in the writ. It is not requisite, however, that the sheriff should specify in his return the particular goods taken, and the sum for which each article has been sold. It is sufficient to make the return in general terms, as for example, that he has levied a certain sum of money, naming it,

out of the goods of the defendant. And accordingly the court in *Willett* v. *Sparrow*, (6 *Taunt.* 576), refused to grant a rule upon the sheriff to amend his return, by particularly specifying the goods which he had taken under the writ of *fieri facias*, whereon he had returned merely an aggregate sum exceeding £600, made of the goods of the defendant. Neither is it necessary that the *time* of the seizure by virtue of the *fieri facias* should be mentioned in the sheriff's return thereof; and indeed it is seldom if ever made, as may be seen by a reference to *Impey's Sheriff and Coroner* 350, where the forms of general returns to such writ are given. See also *Sewell's Sheriff*, 392-3-4 and 5, of the Appendix. The sheriff is not even obliged to make a return to a writ of *fieri facias*, unless ruled to do so, which rule may be obtained by either party; for it is a sufficient justification to him in an action of trespass for taking the defendant's goods, to plead that he took them by virtue of the *fieri facias* directed to him, without showing it returned. *Watson's Sheriff* 143. And if he does make a return, it is sufficient to endorse on the writ, which is most generally all that is done, " I have levied and made of the goods and chattels of the within named C. D. deceased, in the hands of A. B., executor within mentioned, to the value of £50, which money I have ready. The answer of ———— High Sheriff."

Judgment reversed, and a *venire de novo* awarded.